UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALEXANDER C. DUPREE,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>        Defendant. | CASE NO.    C08-5211KLS<br><br>ORDER REMANDING THE<br>COMMISSIONER'S DECISION<br>TO DENY BENEFITS |

Plaintiff, Alexander C. Dupree, has brought this matter for judicial review of the denial of his applications for child's insurance and supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13. After reviewing the parties' briefs and the remaining record, the Court hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 24 years old.[1] Tr. 27. He has a tenth grade education and past work experience as a past work as a janitorial supervisor, janitor and warehouse worker. Tr. 23, 64, 69, 293.

Plaintiff filed an application for SSI benefits and an application for child's insurance benefits on August 29, 2003, and October 8, 2003, respectively, alleging disability as of August 8, 2003, due to an

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

inability to walk and use his fingers resulting from a meningococcemia infection. Tr. 16, 57-58, 63, 274-76. His applications were denied initially and on reconsideration. Tr. 16, 27-29, 32, 38, 277-79. A hearing was held before an administrative law judge ("ALJ") on December 5, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 287-317.

On March 5, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2)    at step two, plaintiff had "severe" impairments consisting of a history of meningococcemia infection with gangrene, status post amputation of several fingers and toes; asthma; and dysthymia;

(3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    after step three but before step four, plaintiff had the residual functional capacity to perform a modified range of light work, with certain additional non-exertional limitations;

(5)    at step four, plaintiff was unable to perform his past relevant work; and

(6)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 16-25. Plaintiff's request for review was denied by the Appeals Council on January 31, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981, § 416.1481.

On April 4, 2008,[3] plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#4). The administrative record was filed with the Court on July 10, 2008. (Dkt. #11). Plaintiff

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3]As indicated herein, plaintiff's complaint was filed more than sixty days after the Appeals Council denied plaintiff's request for review. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 (claimant may file action in federal court within 60 days after the date notice of the Appeals Council's action is received); 20 C.F.R. § 404.982 (any party to Appeals Council's decision or denial of review may request time for filing action in federal court be extended). This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). Because the Commissioner failed to raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the Court will deal with this matter on its merits.

argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

    (a)    the ALJ erred in evaluating the medical evidence in the record;

    (b)    the ALJ erred in failing to order a consultative medical examination;

    (c)    the ALJ erred in assessing plaintiff's credibility;

    (d)    the ALJ erred in evaluating the lay witness evidence in the record;

    (e)    the ALJ erred in assessing plaintiff's residual functional capacity; and

    (f)    the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, hereby finds that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

I.    <u>Requirements for Entitlement to Child's Insurance Benefits</u>

Because plaintiff was age 19 when he applied for child's insurance benefits (Tr. 16, 27), he must demonstrate his disability began prior to the age of 22 to establish entitlement to such benefits. <u>See</u> 20 C.F.R. § 404.350(a) ("You are entitled to child's benefits . . . if . . . (5) . . . your are 18 years old or older and have a disability that began before you became 22 years old."). However, there is no issue regarding plaintiff's burden of proof as to when he first became disabled with respect to his application for SSI benefits, since he was age 19 when he filed that application as well. Tr. 16, 27; 20 C.F.R. § 416.920(a)(2)

("These rules apply to you if you are age 18 or older and you file an application for Supplemental Security Income disability benefits.").

II.       The ALJ Erred in Evaluating the Medical Evidence in the Record

       The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

       In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

       The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

       In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings"

or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

In late January 2004, plaintiff underwent a psychiatric evaluation performed by Beal Essink, M.D., who diagnosed him with an early onset dysthymic disorder, a prior history of cannabis abuse, a deferred provisional diagnosis of a prior history of a moderate childhood-onset-type conduct disorder, and a global assessment of functioning ("GAF") score of "approximately 60." (Tr. 223). While Dr. Essink also opined that plaintiff might have "some ongoing antisocial personality traits" as well, they were not demonstrated during the evaluation. <u>Id.</u> Dr. Essink predicted plaintiff "would be somewhat resistant to taking psychiatric medications," based on his statements to that effect. <u>Id.</u> Dr. Essink concluded as follows:

> Overall, his prognosis for significant change or improvement is quite guarded. Given the claimant's presentation today, I would predict that his ability to focus and concentrate would be average. His pace and persistence would likely be below average to severely below average due to his multiple medical symptoms. I feel that he would have an average ability to follow both simple and complex instructions, but a slightly below average ability to interact appropriately with others, including coworkers and supervisors. I feel he would have a below average ability to tolerate stress, including work-related stress. It's my impression the claimant does have the ability to manage his own funds at this time.

Tr. 223-24.

The ALJ provided the following evaluation of Dr. Essink's opinion:

> . . . The claimant underwent a psychiatric evaluation by Beal Essink, M.D., on January 28, 2004 (Exhibit 4F). Dr. Essink reported the claimant's Global Assessment of Functioning at 60 and diagnosed him with dysthymic disorder. Significantly, the record reveals the claimant has received very little, if any, treatment directed at his alleged mental impairment. For instance, the claimant has refused to take prescription medication (e.g. antidepressants) and has not attended mental health counseling (Exhibits 1F/13 and 4F/2). . . .

Tr. 18-19. Plaintiff argues the ALJ erred by not addressing the limitations found by Dr. Essink and by not including them in his assessment of plaintiff's residual functional capacity ("RFC").[4] Specifically,

---

[4]A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. SSR 96-8p, 1996 WL 374184 *2.

plaintiff asserts the ALJ should have included in the RFC assessment the limitations that he had below average to severely below average persistence and pace, a below average ability to tolerate stress and a slightly below average ability to interact with others, including co-workers and supervisors. The undersigned agrees the ALJ erred in evaluating Dr. Essink's findings.

In assessing plaintiff's mental residual functional capacity, the ALJ found plaintiff "should not be required to interact with members of the general public," and would be "limited to simple, routine and repetitive tasks, but" could "occasionally perform complex tasks." Tr. 20. Clearly, this RFC assessment does not expressly include Dr. Essink's specific limitations regarding persistence and pace, the ability to tolerate stress, and the ability to interact with co-workers and supervisors. Citing to a recent Ninth Circuit decision, Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008), defendant argues the ALJ's limitation to simple, routine and repetitive tasks accommodates Dr. Essink's limitations concerning persistence and pace. As plaintiff points out, though, Stubss-Danielson is limited to its facts, in which the relevant medical opinion source evidence in the record indicated the claimant was capable of performing such tasks, despite the presence also of limitations in persistence and pace. Id. at 1173-74.

In so finding, the Ninth Circuit in Stubbs-Danielson relied on Eighth Circuit case law to hold that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Id. at 1174; see also Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (where psychologist identified claimant as having deficiencies of concentration, persistence or pace, and opined that claimant had ability to sustain sufficient concentration and attention to perform at least simple, repetitive and routine cognitive activity, hypothetical question, which included ability to perform simple, routine and repetitive tasks, adequately captured claimant's deficiencies in concentration, persistence or pace). Here, though, there is nothing in Dr. Essink's opinion to indicate he equated plaintiff's below average to severely below average persistence and pace to the ability to perform simple, routine and repetitive tasks. Indeed, Dr. Essink separately found plaintiff had an average ability to follow simple and complex instructions, which signifies he did not intend to treat these areas of functioning to be interchangeable.

The ALJ, in addition, felt plaintiff to be even more capable than merely possessing an ability to perform simple, routine and repetitive tasks, also finding him, as noted above, to be able to occasionally

perform complex tasks.  There is at least a question though of whether a below, let alone severely below, average ability in persistence and pace encompasses the ability to perform complex tasks at any frequency. Even if defendant's argument did have merit, furthermore, the limitation to simple, routine and repetitive tasks does not cover the other limitations Dr. Essink found plaintiff had in regard to tolerating stress and interacting with co-workers and supervisors.  Nor does the Court find the ALJ's statement that there is little evidence in the record of plaintiff having sought and undergone treatment an adequate basis on which to reject those limitations, especially given that Dr. Essink appears to have been well aware of the lack of such treatment on plaintiff's part.  <u>See</u> Tr. 220-21.  Accordingly, for the foregoing reasons, the Court finds the ALJ erred in evaluating Dr. Essink's opinion and findings.

III.     <u>The ALJ Did Not Err in Failing to Order a Consultative Medical Examination</u>

Plaintiff argues that because the record contains no reports from any treatment providers about his physical impairments and limitations resulting from his meningococal infection subsequent to 2003, the ALJ, pursuant to his duty to develop the record, should have ordered a consulting medical examination of him as requested by his attorney at the administrative hearing.  <u>See</u> Tr. 292.  Specifically, plaintiff asserts the ramifications of the injuries to his fingers and toes resulting from the infection – i.e., the effect those injuries have on his ability to perform work-related tasks – is unclear from the record.  In addition, plaintiff argues the ALJ erred in relying on the findings of Alnoor Virji, M.D., a state agency consulting physician, because that physician provided his assessment in 2004, failed to address plaintiff's asthma or find there to be any environmental limitations stemming therefrom, and made contradictory findings regarding fingering and handling limitations.  Lastly, plaintiff argues the failure to order a consulting medical examination penalizes him for his inability to afford medical treatment.

The ALJ does have a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). However, it is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered. <u>Id.</u> (citations omitted); <u>see also</u> <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001).  Although plaintiff points out the lack of treatment records for the period after 2003, he presents no evidence to indicate there has been a change in his condition since that period.  Indeed, at least in regard to his meningococal infection, plaintiff himself testified at the hearing that he essentially has gotten as well as

he is going to get with respect thereto, that it is not going to get worse and is no longer "eating" at his body, and that his doctors are not expecting to perform any more procedures on him. Tr. 298-99.

Plaintiff also testified at the hearing that he "got stable" within "about one and a half years" after he contracted the meningococal infection, that again he was as good as he was going to get, and that he had been stable "for the last better part of two years." Tr. 306-08. Nor has plaintiff pointed to any evidence, including his own testimony, that his pain or other infection-related symptoms changed so significantly or to such an extent that further evaluation of his physical condition is required in order to make the record unambiguous or sufficient for a proper disability determination. Plaintiff, furthermore, did testify as to the effect the injuries to his fingers and toes have had on his daily functioning and his ability to perform work-related tasks. <u>See</u> Tr. 296-301. That the objective medical evidence in the record may not support all of the symptoms and limitations plaintiff testified to, does not make the record incomplete.

As to the assertion that the ALJ erred in relying on the findings of Dr. Virji because they were made back in 2004, again plaintiff points to no evidence in the record, medical or otherwise, demonstrating his physical condition has changed to such an extent that further development of the record is required. In any event, Dr. Virji's findings were provided within the period during which plaintiff alleges he was disabled, and thus they constitute valid objective medical findings the ALJ may consider. Dr. Virji, furthermore, did note plaintiff's asthma, indicating that it was a secondary diagnosis, and therefore one of the impairments that formed the basis for his residual functional capacity evaluation. Tr. 225. That Dr. Virji failed to find any environmental limitations stemming therefrom (Tr. 229), does not render his findings invalid or at all indicate that impairment was not considered. Indeed, as discussed above and in the next section, plaintiff has not shown that he suffers from any significant work-related limitations due to his asthma, which proper medical treatment has not been able to adequately mitigate.

As to the contradictory findings plaintiff asserts Dr. Virji produced regarding his ability to perform fingering and handling, the fact that Dr. Virji may have been inconsistent in stating he was unlimited in his ability to performing fingering, but limited to performing fingering only frequently with his left hand, does not itself necessarily warrant further development of the record. The ALJ, furthermore, limited plaintiff to not being "required to engage in constant fingering with his left hand," which is not inconsistent with the

1  more restrictive finding made by Dr. Virji. <u>See</u> Tr. 20, 228.  In addition, while, as discussed below, there is

2  evidence in the record that plaintiff's lack of financial resources and/or insurance may have affected his

3  ability to receive treatment for his physical impairments, once more, plaintiff has pointed to nothing in the

4  record which would warrant further development thereof on the part of the ALJ.

5  IV.  <u>The ALJ Conducted a Proper Assessment of Plaintiff's Credibility</u>

6  Questions of credibility are solely within the control of the ALJ.  <u>Sample v. Schweiker</u>, 694 F.2d

7  639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  <u>Allen</u>, 749

8  F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

9  based on contradictory or ambiguous evidence.  <u>Id.</u> at 579.  That some of the reasons for discrediting a

10  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as

11  long as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148

12  (9th Cir. 2001).

13  To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for

14  the disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must

15  identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>;

16  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is

17  malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

18  <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. <u>O'Donnell v.</u>

19  <u>Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

20  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

21  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

22  testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

23  also may consider a claimant's work record and observations of physicians and other third parties

24  regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

25  The ALJ found plaintiff's statements regarding the intensity, persistence and limiting effects of his

26  symptoms to be not entirely credible based in part on the following reasons:

27  The evidence in the record reflects the claimant's functional limitations are not as

28

significant and limiting as has been alleged by the claimant. As discussed above,[5] his daily activities are quite involved. He is able to complete grocery shopping and household errands. He is able to manage the care of his daughter and enjoys visitation rights for his son. He is able to drive an automobile and use public transportation. His hobbies include cars, basketball and being a sports enthusiast. Therefore, the claimant's daily activities suggest a level of functioning greater than what he has alleged in his application and testimony.

Tr. 22. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the limited daily activities cited by the ALJ fail to demonstrate an ability to spend a substantial part of his day performing such tasks or other activities transferable to a work setting, and thus those activities are not a clear and convincing reason for discounting his credibility. The Court agrees. As pointed out by plaintiff, the evidence in the record paints a different picture than that provided by the ALJ, indicating a much more restricted range of activities of daily living. See, e.g., Tr. 72-75, 79-82, 223. For example, plaintiff told Dr. Essink that his girlfriend "does the majority of the household chores," as well as "the majority of the driving." Tr. 223. In addition, while plaintiff may enjoy visitation rights with his son and spend time with him, and may be able to care for his daughter, there is no indication in the record as to what specific tasks these activities involve or how much time he spends doing them. The same is true with respect to plaintiff's interest in cars and sports, particularly in regard to the latter, as again plaintiff told Dr. Essink that he merely watches football and basketball. Id.

The ALJ next discounted plaintiff's credibility in part for the following reasons:

The claimant offered testimony regarding his criminal history. He indicated that he has a prior conviction for distribution of a controlled substance. In addition, the record reveals the claimant has a juvenile criminal history as well, which includes arrests for burglary, theft and possession of a firearm (Exhibit 6F). While the claimant's criminal history is not in itself evidence, which precludes him from receiving disability benefits, it does present significant issues regarding the veracity and truthfulness of his application and testimony.

---

[5]Earlier in his decision, the ALJ additionally noted that plaintiff's activities of daily living included reading and watching television, and that he was "functionally independent with regard to his personal hygiene and financial affairs." Tr. 21.

Tr. 22. Plaintiff challenges this basis for finding him not fully credible, and the Court agrees the ALJ erred in relying on it to do so. While evidence of having been convicted of certain types of crimes, such as theft, may bear on a claimant's reputation for truthfulness, the Court fails to see how a conviction for distribution of a controlled substance, burglary and possession of a firearm necessarily does. In addition, it is not at all clear when plaintiff's conviction for theft occurred, although the record does reveal, as the ALJ noted, that it happened when he was a juvenile. (Tr. 222). Indeed, each of plaintiff's other convictions, except for that involving distribution, occurred when he was a juvenile as well. (Id.).

On the other hand, the ALJ also discounted plaintiff's credibility in part because:

The record reveals the claimant has responded well to treatment. For instance, the claimant's pain is regulated by prescription medication and home exercises (Exhibit 10F/1). Similarly, the claimant's asthma has been well controlled with medication. These facts suggest the claimant's physical impairments do not preclude him from performing basic work activity.

Tr. 22. This is a valid basis for discounting a claimant's credibility. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's credibility on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Plaintiff does not specifically challenge this basis for discounting his credibility, and the record largely reveals that he responded well to treatment for his pain and asthma. See, e.g., Tr. 119, 140, 147, 176, 208-09, 251-55, 260, 268.

Lastly, the ALJ discounted plaintiff's credibility in part for the reason below:

. . . [T]he record does not reflect any significant treatment directed at the claimant's dysthhymia. For instance, the claimant has not taken antidepressants. Furthermore, the claimant has not received mental health counseling. This level of treatment suggests the claimant's mental impairment does not result in significant functional limitation.

Tr. 22. Again, this is a valid basis for discounting a claimant's credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting of claimant's credibility in part due to lack of consistent treatment, and noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain). The record shows that although plaintiff would benefit from psychiatric medication, he has declined to take it without a valid reason for refusing to do so. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking or following prescribed course of treatment, or finding that proffered reason is not believable, can cast doubt on sincerity of claimant).

In late August 2003, for example, one of plaintiff's treatment providers noted the record reflected that he "would benefit from anti-depressants," but that "he declined to be started on antidepressants, stating that he" was "just doing fine." Tr. 119; see also Tr. 175. In early September 2003, plaintiff "was noted to be depressed." Tr. 127. While plaintiff once more was offered antidepressants, he again refused. Id. In late January 2004, Dr. Essink noted that plaintiff was receiving "no psychiatric treatment," was "not taking any psychiatric medications" and did "not receive any counseling." Tr. 220-21. Dr. Essink further reported that plaintiff stated he would be "resistant to taking psychiatric medications." Tr. 223.

Plaintiff argues that in discounting plaintiff's credibility on this basis, the ALJ ignored the fact that he did not have any income or medical insurance, and that poverty is a legitimate reason to forego medical treatment. While the record does contain evidence that plaintiff has had trouble obtaining and/or keeping medical insurance, as discussed above, he never gave that as a reason for not taking psychiatric medication or getting mental health counseling, nor is there any indication that is why plaintiff declined treatment for his alleged depression. In addition, it appears that lack of medical insurance and inability to pay has been a factor only in regard to treatment for his physical impairments. See, e.g., Tr. 124, 204, 208. Although it is true that the fact that a claimant does "not seek treatment for a mental disorder until late in the day" is not a proper basis upon which to find a lack of credibility regarding that disorder, here, again as discussed above, the evidence in the record fails to support plaintiff's assertion that this is why he refused to pursue mental health treatment. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often do not recognize their condition reflects potentially serious mental illness); see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (finding questionable practice of chastising one with mental impairment for exercise of poor judgment in seeking rehabilitation).

As explained above, not all of the reasons the ALJ gave for discounting plaintiff's credibility were valid. Nevertheless, the ALJ did provide at least two valid reasons for doing so. In addition, the fact that some of the reasons for discounting plaintiff's credibility may have been improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record as a whole, as it is in this case. Tonapetyan, 242 F.3d at 1148. That is, notwithstanding the two invalid reasons the ALJ gave in this case, the two clear and convincing reasons he did provide make his decision to find plaintiff not entirely credible permissible.

V.       The ALJ Erred in Evaluating the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a written statement from plaintiff's father, Frank Dupree, which set forth his observations of plaintiff's physical and mental impairments and limitations. Tr. 114.  With respect to that statement, the ALJ found as follows:

> I considered written statements provided by Frank Dupree, the claimant's father (Exhibit 9E).  However, because Mr. Dupree has a personal relationship with the claimant and lacks the expertise and possibly the motivation to offer an objective or functional assessment, his statements regarding the claimant's symptoms and limitations are considered with caution.

Tr. 21.  Plaintiff argues these are not valid reasons for rejecting his father's statement.  The Court agrees. First, while it may be true that lay witnesses are not qualified to give opinions on the ultimate issue of disability, the Commissioner's own regulations require consideration of "observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing 20 C.F.R. § 404.1513(e)(2)).  In addition, "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Id.

It does appear to be true as well that the existence of a "close relationship," and the potential to be "influenced" by the "desire to help," may be viewed as being "germane" to the particular lay witness. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (finding ALJ properly considered close relationship that existed between claimant and his former girlfriend and possibility that she may have been influenced by desire to help him).  Without actual evidence that such a close relationship indeed may have influenced

the statement Mr. Dupree provided concerning his observations of plaintiff's functioning, however, this alone is not a legitimate basis for discounting that statement. Otherwise an ALJ could reject all statements provided by a claimant's friends and relatives on the basis of the existence of a close relationship and the desire to help one's friend and/or own family member. The ALJ thus erred here.

VI.     The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the following residual functional capacity:

> **. . . at all times relevant to this decision, the claimant's residual functional capacity has allowed him to perform a limited range of light work. He is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He is able to stand and/or walk a total of 2 hours during a fulltime 8-hour workday. Due to difficulties balancing, he is limited to only occasional standing and/or walking on uneven surfaces. He is able to walk no more than 2 blocks at any given time before needing to sit or stand. His ability to sit is unlimited. He is right hand dominant. He should not be required to engage in constant fingering with his left hand. He should avoid using ropes, ladders or scaffolds. He is able to occasionally climb, balance, stoop and crawl. He should avoid concentrated exposure to dust, fumes, odors and gases. He should not be required to interact with members of the general public. He is limited to simple, routine and repetitive work, but can occasionally perform complex tasks.**

Tr. 20 (emphasis in original). Plaintiff argues this assessment of his RFC is erroneous, because the ALJ failed to assess his ability to work on a "regular and continuing basis" for eight hours a day, five days a

week "in light of the evidence to the contrary." (Dkt. #13, p. 17).  The Court disagrees.

It is true that a claimant's residual functional capacity ordinarily is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 *2 (emphasis in original).  The RFC assessment itself thus "must include a discussion of the individual's abilities <u>on that basis</u>." <u>Id.</u> (emphasis added).  However, when there is nothing in the record to suggest the claimant is unable to work on a sustained basis, the ALJ is not required to make an express determination as to whether work could be maintained on such a basis. <u>See</u> <u>Frank v. Burnhart</u>, 326 F.3d 618, 621 (5th Cir. 2005) (rejecting argument that separate findings must be made on obtaining and maintaining work in every case, even those in which claimant does not suggest there is any difference between the issue of his ability to work and his ability to sustain work); <u>see also</u> <u>Perez v. Barnhart</u>, 415 F.3d 457, 466 (5th Cir. 2005) (claimant failed to offer any evidence his condition waxed and waned in intensity such that ability to maintain work was not adequately taken into account in RFC determination).

Plaintiff argues his ability to perform sustained full-time work activity is undermined by Dr. Essink finding that he was below to severely below average in his ability to maintain persistence and pace. <u>See</u> Tr. 224.  Plaintiff also points to the mental residual functional capacity evaluation form completed by Janis L. Lewis, Ph.D., in early February 2004, and affirmed by Thomas Clifford, Ph.D., in late June 2004, in which they found him moderately limited in his ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, and be punctual. Tr. 232-33.  It is not clear, however, that the limitations Drs. Essink, Lewis and Clifford found in plaintiff's capabilities in these areas necessarily indicate a restricted ability or inability to work full-time.  Indeed, Drs. Lewis and Clifford expressly found plaintiff was not significantly limited in his ability to complete a normal workday or workweek (Tr. 233), and, in any event, felt that by August 2004, he would be capable of performing full-time work (Tr. 235). <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that has lasted or can be expected to last for continuous period of not less than twelve months).

Plaintiff also argues the ALJ failed to consider his unsuccessful work attempt, with respect to which he testified he was unable to keep up, thus implying he lacked the persistence and pace needed for

competitive work. <u>See</u> Tr. 301. Again, though, as discussed above, a deficit in persistence and pace does not necessarily imply an inability to complete a normal workday or workweek. Plaintiff also testified, furthermore, that he "wanted to quit" that job, that he "wasn't fitting in the right way," and "it was a mutual situation" in terms of him leaving work. <u>Id.</u> In addition, as discussed below, the ALJ properly declined to find plaintiff's statements regarding his symptoms and complaints to be entirely credible, and thus did not err in failing to find this alleged unsuccessful work attempt constituted evidence of an inability or restricted ability to perform full-time work.

Plaintiff next argues the ALJ erred in finding him able to engage in less than constant fingering with his left hand, when there is no medical evidence that he can do so with a left hand that is missing one finger and that has two other severely deformed fingers. As discussed above, however, Dr. Virji did find plaintiff to be capable of performing fingering with his left hand on a frequent – i.e., less than constant – basis. Tr. 228. Also as discussed above, the ALJ did not err in relying on that finding to limit plaintiff as he did in his RFC assessment. Plaintiff is incorrect as well in asserting that there is no evidence his right hand and right fingers are fully functional, as Dr. Virji found no limitations with respect thereto based on his review of the medical evidence in the record. That his review occurred in 2004 has no bearing on the reliability of his findings, given that, once more as discussed above, there is no objective medical evidence in the record that plaintiff developed additional hand limitations subsequent thereto.

Nevertheless, the Court does find that remand is proper for further consideration of plaintiff's hand and finger impairments. This is because, as discussed below, the ALJ erred in evaluating the observations of plaintiff's father, who, as plaintiff notes, stated he had "great difficulty manipulating things with both hands," that there was "no way he could constantly use either hand" and that there was "no way he could frequently use either hand." Tr. 114. As such, the Court also finds that on remand those statements should be reviewed in the context of the medical and other evidence in the record as a whole concerning plaintiff's hand impairments, notwithstanding the lack of error on the part of the ALJ, discussed above, in evaluating the objective medical evidence regarding those impairments.

The Court further finds that remand is warranted to re-consider the findings of Dr. Essink regarding plaintiff's mental functional limitations, in light of the ALJ's erroneous evaluation thereof discussed above. In addition, the Court agrees with plaintiff that the ALJ failed to properly address all of the mental

functional limitations found by Drs. Lewis and Clifford. Specifically, the ALJ failed to note the moderate limitations those psychologists found plaintiff had in his ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, and respond appropriately to changes in the work setting, or explain why he did not adopt these limitations. <u>See</u> Tr. 232-34. This failure to do so is reversible error, making remand appropriate here.

## VII.   The ALJ Did Not Conduct a Proper Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). <u>Tackett</u>, 180 F.3d at 1100-1101; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1987); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." <u>Embrey</u>, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert which contained substantially the same limitations as those the ALJ included in his assessment of plaintiff's residual functional capacity. Tr. 314-15. In response to that hypothetical question, the vocational expert testified that an individual with those limitations could perform the jobs of lamp-shade assembler (Dictionary of Occupational Titles ("DOT") 739.684-094) and semiconductor dies loader (DOT 726.687-030. Tr. 315). Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 23-24.

Plaintiff argues the ALJ erred in his step five analysis here, because the hypothetical question he posed to the vocational expert was based on an erroneous residual functional capacity assessment, and thus did not contain all of his functional limitations. The Court agrees. As discussed above, the ALJ did err in assessing plaintiff's RFC, thus making it unclear whether the hypothetical question the ALJ posed to the vocational expert at the hearing contained all of plaintiff's limitations. Plaintiff argues as well that because both of the jobs the vocational expert identified are unskilled and sedentary, and because most such jobs require good use of the hands and fingers, the ALJ also erred in finding him to be capable of performing those two specific jobs. Again, the Court agrees.

SSR 83-10 provides that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." 1983 WL 31251 *5. In addition, SSR 96-9p provides that "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity," including for "repetitive hand-finger actions," and that "[a]ny *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." 1996 WL 374185 *8. While a finding of disability may be proper where there is "an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (i.e., 'limits the individual to sedentary jobs which do not require bilateral manual dexterity.')," where "the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource." Id.

Given this language concerning manipulative limitations, plaintiff argues the vocational expert was required to explain why his testimony departed from the descriptions contained in the DOT of the two jobs he identified at the hearing. As plaintiff admits, though, the DOT's descriptions thereof, while describing them as sedentary, unskilled jobs, do not specify whether both hands are required for performing handling. See DOT 739.684-094; DOT 726.687-030. Rather, plaintiff appears to be arguing that the Commissioner's language concerning manipulative limitations and sedentary, unskilled work should be applied to the job descriptions contained in the DOT. The Court rejects this argument, as plaintiff presents no legal authority to support it, nor is the Court aware of any. Indeed, the DOT's definition of sedentary work employed in the descriptions for the two jobs at issue here make no mention of manipulative or handling requirements, and the skill level, or specific vocational preparation ("SVP"), for each job is

defined as follows: "Level 2 – Anything beyond short demonstration up to and including 1 month."[6] Id.

The DOT description of the job of semiconductor dies loader, however, does expressly require the ability to perform handling and fingering on a constant basis, which is defined as existing "2/3 or more of the time." DOT 726.687-030. As such, the vocational expert's testimony, which was based on the ALJ's hypothetical question and the limitations contained therein, is inconsistent with the DOT' description of this job. The ALJ's failure to ask the vocational expert about this inconsistency was error. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999) (ALJ has affirmative responsibility to ask vocational expert about possible conflicts between his or her testimony and information contained in DOT); see also SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.

The ALJ also must explain in his decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4. The ALJ's failure to do so here thus constitutes error as well. With respect to the job of lamp-shade assembler, however, the DOT describes it as requiring the ability to perform handling and fingering only frequently, which is defined as existing "from 1/3 to 2/3 of the time." DOT 739.684-094. This, though, is consistent with the limitation on fingering contained in the hypothetical question, and accordingly the vocational expert's testimony. As such, the Court finds no conflict exists between the vocational expert's testimony and the description of the handling and fingering requirements for the job of lamp-shade assembler contained in the DOT. Nevertheless, given that the ALJ improperly evaluated the statement of plaintiff's father – which, as discussed above, refers to significant additional limitations in plaintiff's ability to use his hands – it is not clear plaintiff would be able to perform frequent handling or fingering. As such, remand to reconsider this issue is proper as well.

VIII.  Remand for Further Administrative Proceedings Is Appropriate

The Court may remand this case "either for additional evidence and findings or to award benefits."

---

[6] SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C. According, to the Social Security regulations, an SVP of 2 does correspond to unskilled work. SSR 00-4p, 2000 WL 1898704 *3. However, there is nothing in Appendix C, or the descriptions of the two jobs identified by the vocational expert, to indicate the DOT itself treats jobs with an SVP of 2 as being unskilled, notwithstanding the Commissioner own interpretation of that level of required special vocational preparation.

<u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the medical evidence in the record, the statement of plaintiff's father, plaintiff's residual functional capacity, and plaintiff's ability to perform other jobs existing in significant numbers in the national economy, remand to the Commissioner for further administrative proceedings is appropriate.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the <u>Smolen</u> test will not be found to have been met. <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." <u>Bunnell</u>, 336 F.3d at 1116. Because it is not clear the ALJ would be required to find plaintiff disabled on crediting Dr. Essink's findings, the Court finds it is not appropriate to credit those findings as true at this time.

It also is true that where lay witness evidence is improperly rejected, that testimony may be credited as a matter of law as well. <u>See</u> <u>Schneider v. Barnhart</u>, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear

claimant's limitations were sufficient to meet or equal listed impairment). As noted by the Ninth Circuit, however, the courts do have "some flexibility" in how they apply the "credit as true" rule. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003). Further, <u>Schneider</u> dealt with the situation where the Commissioner failed to cite any evidence to contradict the statements of five lay witnesses regarding her disabling impairments. 223 F.3d at 976. Such is not the case here. Accordingly, the Court also declines to credit the statements of plaintiff's father as true at this time as well.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

DATED this 6th day of February, 2009.

Karen L. Strombom
United States Magistrate Judge